UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
DONNA JOHNSON,

          *Plaintiff*,

   v.

A. STEIN MEAT PRODUCTS, INC., HOWARD
MORA, ALAN BUXBAUM, KAREN MORA, *and*
STACI ANN BLANK,

          *Defendants*.

-----------------------------------------------------------------------x

14 Civ. 5776

**COMPLAINT**

    Plaintiff Donna Johnson by counsel, The Harman Firm, PC, alleges for her complaint against Defendants A. Stein Meat Products, Inc., Howard Mora, Alan Buxbaum, Karen Mora, and Staci Ann Blank (hereinafter "Defendants") as follows:

## PRELIMINARY STATEMENT

    1.    In this employment discrimination and defamation action, Plaintiff seeks damages and costs against Defendants A. Stein Meat Products, Inc., (hereinafter referred to as "Stein Meats") Howard Mora (hereinafter referred to as "Defendant Mora"), and Alan Buxbaum (hereinafter referred to as "Defendant Buxbaum") for gender discrimination and for hostile work environment, and against Defendants Mora, Karen Mora, and Staci Ann Blank for publication of defamatory statements causing injury to Plaintiff.

    2.    This matter arises under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), New York City Human Rights Law as codified at N.Y.C. ADMIN. CODE §§ 8-101-31 ("NYCHRL"), and New York State law. Defendants Mora and Buxbaum grossly underpaid Plaintiff relative to her male colleagues for equal work requiring equal skill, effort, and responsibility, denied her

training opportunities, and imposed a hostile work environment on Plaintiff. Defendant Howard Mora, Karen Mora, and Staci Ann Blank all published defamatory statements about Plaintiff.

## JURISDICTION AND VENUE

3. Jurisdiction over Plaintiff's claims is conferred on this Court by 28 U.S.C. § 1331 as Defendants violated Plaintiff's rights under 29 U.S.C. § 206(d).

4. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiff's claim brought under New York State law.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York as a substantial part of the events giving rise to the claim occurred within this District.

## TRIAL BY JURY

6. Plaintiff respectfully requests a trial before a jury.

## PARTIES

7. Plaintiff Donna Johnson worked at Defendant Stein Meats at all times relevant hereto, and was and is a resident of Kings County, New York.

8. Defendant Stein Meats is a domestic business corporation organized under the laws of New York, with its principal place of business at 5600 First Avenue, Building B, Brooklyn, New York 11220.

9. Defendant Mora is the Chief Executive Officer and a co-owner of Stein Meats. Upon information and belief, Defendant Mora is a resident of the State of New York.

2

10. Defendant Buxbaum is a co-owner of Stein Meats. Upon information and belief, Buxbaum is a resident of the State of New Jersey.

11. Defendant Karen Mora is Defendant Mora's spouse. Upon information and belief, Karen Mora is a resident of the State of New York.

12. Defendant Staci Ann Blank is an acquaintance of Frank Farella, who is a manager at Stein Meats. Upon information and belief, Staci Ann Blank is a resident of the State of New York.

### STATEMENT OF FACTS

13. Plaintiff Johnson worked at Stein Meats for nearly twenty (20) years.

14. Ms. Johnson is female.

15. In and around February 1994, Ms. Johnson began her employment with Defendant Stein Meats as a receptionist.

16. She was paid ten dollars ($10) per hour.

17. When Ms. Johnson began her employment with Defendant Stein Meats, founders Abraham Mora and Harry Buxbaum owned, operated and managed Stein Meats.

18. In and around 1997, due to her hard work, outstanding performance, and qualifications, Ms. Johnson was promoted to Office Manager.

19. After her promotion, Ms. Johnson was paid $1200 per week.

20. In and around 2000, Defendants Mora and Buxbaum, the sons of Abraham Mora and Harry Buxbaum respectively, took over Stein Meats.

21. Shortly thereafter, Ms. Johnson was subjected to disparate treatment for being a woman.

22. Defendants Mora and Buxbaum consistently treated their female employees worse than their male counterparts. Women were underpaid, harassed, and their professional input was ignored.

23. During Ms. Johnson's tenure as Office Manager at Defendant Stein Meats, Defendant Stein Meats paid male managers substantially more than Ms. Johnson.

24. There were three (3) managers at Stein Meats: Donna Johnson, Frank Farella, and Charlie Nixon.

25. In and around December 2008, Frank Farella started working for Stein Meats.

26. In and around November 2011, Charlie Nixon started working for Stein Meats.

27. Frank Farella and Charlie Nixon are both male.

28. Charlie Nixon was paid $2300 a week.

29. Frank Farella was paid $2200 a week and received quarterly commission checks.

30. Ms. Johnson performed jobs that required substantially equal skill, effort and responsibility under similar working conditions as Mr. Farella and Mr. Nixon. All three (3) individuals were responsible for collecting payments, supervising employees, ordering dry goods, taking orders from customers, closing up the premises, and issuing credit and invoices on behalf of Stein Meats.

31. Ms. Johnson repeatedly brought to the attention of Defendants Mora and Buxbaum that she was substantially underpaid relative to her colleagues.

4

32. Defendants Mora and Buxbaum justified the pay disparity on the basis that the male managers were closing the plant everyday; however, when Ms. Johnson was closing the plant every day, she was not paid more.

33. Defendants Mora and Buxbaum repeatedly demeaned Ms. Johnson by being rudely and harshly dismissive of her business and leadership initiatives.

34. For example, in and around 2011 after becoming aware that Stein Meats was in perilous financial decline, Ms. Johnson suggested to Defendants Mora and Buxbaum that they should focus on expanding Stein Meats' customer base.

35. Ms. Johnson offered to cold call and to schedule visits to wedding venues, where she had contacts due to her personal connections, and she requested Stein Meats' price list to offer its products. Defendants Mora and Buxbaum laughed at Ms. Johnson's initiative, mocking and ridiculing her. Defendants Mora and Buxbaum immediately dismissed Ms. Johnson's idea.

36. Further, Defendants Mora and Buxbaum told Ms. Johnson that increasing sales was not a simple task and that Mr. Farella should be present in business meetings with prospective customers, notwithstanding that as Office Manager at the Stein Meats for nearly twenty (20) years, Ms. Johnson was more than capable of conducting such meetings on her own.

37. Defendants Mora and Buxbaum routinely excluded Ms. Johnson from company outings to which the other two (2) male managers were invited, including outings to Barclays Center, Citi Field, and the Meadowlands Sports Complex.

38. Defendants Mora and Buxbaum refused to publicly acknowledge her as an Office Manager. On the rare occasion that Ms. Johnson was invited to Stein Meats events, Defendants Mora and Buxbaum would not introduce her to anyone and act as if she were not there.

5

Defendants Mora and Buxbaum would keep Frank Farella by their side and introduce him to everyone.

39. On or about August 10, 2013, in a further effort to help Stein Meats with its financial woes, Ms. Johnson contacted Marcus Lemonis, the host of on CNBC reality show "The Profit."

40. Mr. Lemonis has been described as a "serial entrepreneur," with a proven track record of helping to turn around troubled businesses.

41. On each episode, Mr. Lemonis offers a struggling small business his expertise, advice and, potentially, a financial investment in that company.

42. In and around November 2013 until February 2014, filming took place for the episode of "The Profit" featuring Stein Meats.

43. During the filming of the show, Mr. Lemonis made an offer to buy 50% of the company; however, Mr. Lemonis subsequently withdrew his offer after he learned that the company's financial state was far more precarious than he initially believed to be true.

44. Defendant Mora and Buxbaum unjustly, vexatiously, and maliciously blamed Ms. Johnson for Mr. Lemonis' decision to withdraw his offer.

45. In and around January 2014, Defendant Mora began verbally abusing Ms. Johnson because of the show.

46. On or about January 30, 2014, Defendant Mora called Ms. Johnson into his office and starting yelling and cursing at Ms. Johnson.

47. Defendant Mora started to walk by Ms. Johnson at work and hiss names at her like "bitch" and "traitor."

48. Defendant Mora's egregious abuse caused Ms. Johnson to be extremely anxious and afraid to continue going to the office, but she did not complain out of fear of losing her job.

49. In and around February 2014, Defendant Mora and Buxbaum constructively terminated Ms. Johnson by forcing her to endure ceaseless, malicious harassment and verbal abuse.

50. Ms. Johnson was devastated by Defendants Stein Meats, Mora and Buxbaums's abusive treatment of her, particularly after twenty (20) of her dedicated, hard-working services for Stein Meats.

51. On or about March 4, 2014, the episode of "The Profit" featuring Stein Meats aired.

52. During the airing, Defendant Staci Ann Blank wrote from her personal account on Twitter to Mr. Lemonis that "Marcus is totally under the donna spell," "This Donna lady is a disloyal bullying bitch. SHE NEEDS TO GO," and "[Ms. Johnson] has SUB ZERO interpersonal skills. Not good for an officer manager."

53. On or about March 5, 2014, Defendant Staci Ann Blank wrote from Stein Meats' Twitter page on Twitter that "honesty evidently is NOT your strong suit" regarding Ms. Johnson.

54. On or about March 4, 2014, Defendant Karen Mora wrote on Mr. Lemonis' Facebook page that Ms. Johnson was "an infinite disappointment and overwhelming ingrate" as well as demeaning the integrity of "Christian values" and suggesting that "this is just the beginning of [her] reaction."

7

55. On or about March 5, 2014, Defendant Karen Mora wrote on Mr. Lemonis' Facebook page that "[Lemonis] flattered [Ms. Johnson] into an Oscar winning performance. U truly deserve each other. When u both go to church this Sunday stop by the confession booth…especially your soul mate Donna Johnson. What hypocrisy. No forgiveness."

56. On or about March 5, 2014, Defendant Mora wrote on Mr. Lemonis' Facebook page that "It is beyond amazing how you took an employee of over 20 years and turned her into a backstabber, traitor and mole in such a short period of time. Thinking that she was the heart and sole [sic] of A. Stein is definitely not the case. You should have renamed the episode 'the Frank and Donna Show'. [sic]."

57. In and around July 2014, Ms. Johnson finally obtained new employment, but she now works fewer hours and has less responsibility than she had with Stein Meats.

58. In addition, during Ms. Johnson's tenure at Stein Meats, Defendants Mora and Buxbaum required Ms. Johnson to lease a car and offered to pay for it. Now Stein Meats is not paying for the lease and Ms. Johnson is stuck paying for a car lease she never anticipated being responsible for.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) Against Defendants Stein Meats, Mora, and Buxbaum**

59. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1-58 with the same force as though separately alleged herein.

60. The Equal Pay Act of 1963, 29 U.S.C. § 206(d) mandates that no employer discriminate between employees on the basis of gender by paying employees of one gender

lower wages than employees of another gender for equal work on jobs which requires equal skill, effort, and responsibility, and are performed under similar working conditions.

61. Defendant Stein Meats, Defendant Mora, and Defendant Buxbaum violated 29 U.S.C. § 206 by paying Plaintiff less than similarly situated male colleagues in positions that required similar skill, effort, and responsibility.

62. As a direct and proximate consequence of Defendants' gender discrimination, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

63. Plaintiff is entitled to compensatory damages, back pay, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### SECOND CAUSE OF ACTION
### Violation of NYCHRL for Unequal Pay against Defendants Stein Meats, Mora, and Buxbaum

64. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1-63 with the same force as though separately alleged herein.

65. NYCHRL § 8-107 mandates that no employer discriminate against an employee in compensation or in terms, conditions or privileges of employment on the basis of gender.

66. Defendants Stein Meats, Mora, and Buxbaum violated NYCHRL § 8-107 by paying Plaintiff less than similarly situated male colleagues in positions that required similar skill, effort, and responsibility.

67. Plaintiff is entitled to compensatory damages, back pay, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### THIRD CAUSE OF ACTION
**Violation of NYCHRL for Hostile Work Environment based on Gender Discrimination against Defendants Stein Meats, Mora, and Buxbaum**

68. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1-67 with the same force as though separately alleged herein.

69. NYCHRL § 8-107 mandates that no employer discriminate against an employee in compensation or in terms, conditions or privileges of employment on the basis of gender.

70. Defendant Stein Meats, Mora, and Buxbaum violated NYCHRL § 8-107 by discriminating against Ms. Johnson due to her gender by subjecting her to different standards than her male counterparts, which made it impossible for her to perform her work form them.

71. As a direct and proximate consequence of Defendants' gender discrimination, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

72. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### FOURTH CAUSE OF ACTION
**Defamation Against Defendants Mora, Karen Mora, and Staci Ann Blank**

73. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1-72 with the same force as though separately alleged herein.

74. A cause of action for *per se* libel includes broadcasting or publishing a false statement about another that accuses that person of immoral acts, inability to perform his/her profession, and/or dishonesty in business.

75. Defendants Mora, Karen Mora, and Staci Ann Blank all broadcasted and published statements that exposed Ms. Johnson to public contempt, ridicule, aversion, and disgrace and accused her of immoral acts, the inability to perform her profession, and/or dishonesty in business.

76. Defendants Mora, Karen Mora, and Staci Ann Blank's comments were all made maliciously and intentionally to induce resentment toward Plaintiff.

77. As a result of Defendants' unlawful acts, Plaintiff was and is publicly humiliated and her reputation as an office manager was besmirched.

78. By reason of the foregoing, the Plaintiff has been and is greatly damaged in her name, fame, reputation, profession and credit.

79. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully request the following relief:

A. For the first claim, actual damages to be determined at trial, but in no event less than $1,000,000;

B. For the second claim, actual damages to be determined at trial, but in no event less than $1,000,000;

C. For the third claim, actual damages to be determined at trial, but in no event less than $1,000,000;

D. An award of compensatory, assumed, and punitive damages;

E. Pre-judgment and post-judgment interest;

F. Attorneys' fees and costs; and

G. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 2, 2014

By: *[signature]*
Ronnie L. Silverberg [RS-6881]
Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, P.C.
*Attorneys for Plaintiff*
1776 Broadway, Suite 2030
New York, NY 10019
(212) 425-2600
rsilverberg@theharmanfirm.com
wharman@theharmanfirm.com

12